LULU M. MARTIN *v*. JOHN A. KELLEY.

PETER J. MARTIN *v*. SAME.

*Atlee F. Zellers* and *H. Thornton Lorimer* (*Mr. Lorimer* orally), for the plaintiffs.

*Sulloway, Piper, Jones, Hollis & Godfrey* and *Irving H. Soden* (*Mr. Soden* orally), for the defendant.

DUNCAN, J. The collision which gives rise to these actions occurred as the plaintiff wife (hereinafter called the plaintiff) was

crossing the highway from west to east after leaving "Dot's Restaurant," so-called, on the westerly side of the highway. Her husband was waiting for her in an automobile on the easterly side of the highway and her minor son, according to her testimony, accompanied her half way of the road and then ran on ahead to enter the automobile. She was struck at or just easterly of the center of the highway. The defendant, who was proceeding southerly, testified that he saw the plaintiff approaching the highway when he was two hundred feet away but expected her to wait until he had passed. As he described the accident, when he "got about fifty feet from her, she made this dash out in front of me." He testified that although he turned to his left, he was then unable to avoid striking her.

The plaintiffs claimed that the defendant was traveling at an excessive speed, that he failed to keep a proper lookout, and that he was at fault for failing to comply with the requirements of R. L., c. 119, s. 22, prescribing the conduct of an operator approaching a pedestrian on the traveled way. These issues were all submitted to the jury. The instructions relating to speed quoted R. L., c. 119, s. 29, as amended by Laws 1949, c. 286, s. 1, in full and dealt with the *prima facie* limit of fifty miles an hour established by section 30 IV as so amended. The plaintiffs excepted to the failure of the Court to instruct the jury with respect to the following portion of the amended section 30: "The driver of every motor vehicle shall, consistent with the requirements of section 29, drive at an appropriate reduced speed . . . when approaching a hill crest. . . ."

There was evidence that a person near the highway in front of the restaurant could first see a southbound automobile approaching the scene of the accident as it came over a rise at a distance of 676 feet away. Two-thirds of the automobile would be visible at 500 feet and it would come into full view at a distance of 393 feet. The operator of such an automobile could see the top of a pedestrian's head from a point 650 feet away, and increasingly more as he continued south. The highway north of the restaurant was practically straight over the distance involved, and for over a hundred feet north of the restaurant was "almost level" according to a civil engineer who testified. The same witness testified: "The high point of the hill, if you can call it that, is about in front of the restaurant, but the change in the area shown is very slight." While "the area shown" does not clearly appear from the record, other testimony of the witness indicates that it extended beyond a utility pole more

than 100 feet to the north. The testimony relating to obstruction of the view indicated that there was no appreciable grade for about 400 feet at least. The defendant testified that he first saw the plaintiff when he was about 200 feet away.

Under the circumstances thus disclosed there was no error in the denial of the plaintiffs' request. The situation presented resembles that considered by the court in *Laflamme* v. *Lewis*, 89 N. H. 69, under a statute enacted in 1927 and repealed ten years later, which imposed a *prima facie* limit of fifteen miles an hour in "traversing a grade upon a highway when the driver's view is obstructed within a distance of one hundred feet." Laws 1927, *c*. 76, *s*. 2; repealed by Laws 1937, *c*. 125, *s*. 3. The plaintiffs concede that the present statute was designed to apply when a hill is such as to obstruct the view, and this appears to be clearly so. See *Woodbridge* v. *Desrochers*, 93 N. H. 87, 89. In *Laflamme* v. *Lewis, supra*, 73, it was said: "There is no suggestion in the record that the accident happened upon a . . . grade within the meaning of the act. . . If [the road] was not entirely level, no appreciable grade was mentioned . . . Under these circumstances, the statutory provisions above quoted were clearly inapplicable . . . ."

The statute in its present form bears no substantially different relation to the facts of this case. It was operative only "when [the defendant was] approaching a hill crest" which means the portion of the grade which obscured his view. See *Woodbridge* v. *Desrochers, supra; Reuhl* v. *Uszler*, 255 Wis. 516. When the view ceased to be obstructed the statute ceased to apply, and the defendant's conduct was thereafter governed by the remaining requirements of sections 29 and 30 and those of section 22, concerning all of which the jury was instructed. If the defendant had reduced his speed upon the hill, he would have been free to resume speed when his view was no longer obstructed, provided he complied with the statutes placed before the jury.

The plaintiffs argue that violation of the statute could be found causal because the defendant had insufficient time to act to avoid the plaintiff, if he came over the hill at a speed of fifty miles an hour. It cannot be gainsaid that if he had arrived at the crest of the hill an appreciable time after he did, the accident might not have occurred. But this does not establish that any fault prior to his arrival at the crest was a violation of duty to the plaintiff, or causal of the accident which ensued. "It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute

and that he would not have been injured if the duty had been performed. He must go further and show that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him." *Flynn* v. *Gordon,* 86 N. H. 198, 200.

The shortness of the time available for action by the defendant was not accounted for by his speed on the hill, but by the length of time which it took the plaintiff to cross from where she looked both ways, to where she was struck near the center of the highway. There was evidence that this was from four to seven seconds. If the defendant traveled at a speed of fifty miles an hour, he would thus have been from three to five hundred feet away when he first could have had notice that the plaintiff intended to cross. He would then have been south of the crest of the hill; and by as much as two hundred feet if the time was four seconds. If his average speed in approaching the scene of the accident was less, he would have been correspondingly farther south of the crest when the plaintiff started to cross. His speed as he ascended the hill could not reasonably be found causal of any inability to take saving action while he was traveling over the stretch of highway extending for five hundred feet south of the hill. The case was submitted to the jury under the emergency doctrine (*Bonenfant* v. *Hamel,* 96 N. H. 228) as well as the requirements of sections 22 and 29, *supra.* The requirements of the statutes and the instruction that the defendant was not entitled to the benefit of the emergency doctrine if the emergency was occasioned by his own prior fault, sufficiently protected the rights of the plaintiffs.

The plaintiffs' contention is succinctly answered by the defendant as follows: "By returning verdicts for the defendant, the jury must have found either one of two things: (1) . . . the defendant did not violate the statutes in question, or (2) if he did, the plaintiff was guilty of contributory negligence. If the jury found that the defendant did not violate either of the statutes which obviously applied to the situation, and which were covered by the Court's charge, it is difficult to see how liability could be predicated on violation of the statute which applied to a hill several hundred feet up the road. On the other hand, if the jury's verdicts were based on the finding of contributory negligence, plaintiff is not entitled to recover anyway."

The exception to the denial of the plaintiffs' request is overruled.

In the course of argument, counsel for the defendant reviewed

certain testimony by the plaintiff husband, and in so doing said: "Now he testified that the mother and the boy walked to the center of the highway together . . . he says the boy ran over to the car and while the boy was coming around here he had time to look around, say a word or two to the boy about the price of corn, then see the car go by, get out of the car, see his wife up in the air, and all the time she was hit at the center of the highway." Objection was made "to the argument that Mr. Martin said anything to the boy at that time." Defendant's counsel elected to "stand on it," the Court instructed the jury to "take their own recollection of the evidence and not that of either of the lawyers" and when the plaintiffs' counsel sought an exception, defendant's counsel continued: "I stand on it—that he and the boy had a conversation about the price of corn when the boy came back to the car." Defendant's counsel then said: "Note my exception."

The record indicates that Mr. Martin testified that when the boy reached the door of the car, the boy "made just a remark about vegetables . . . spoke about the money for the corn." Thus the argument of counsel was not in strict accordance with the evidence, even after correction to the statement that "he and the boy had a conversation about the price of corn."

When the misstatement was first made, the Court gave a cautionary instruction frequently used as a matter of practice. The instruction "made it clear that the argument was to receive consideration only if the evidence was stated correctly" (*Weiss* v. *Wasserman*, 91 N. H. 164, 167), and when counsel asserted that he would stand on the argument he was not "permitted to take [his] chances" as in *Public Service Company* v. *Chancey*, 94 N. H. 259. Under ordinary circumstances an instruction such as was given in this case is considered sufficient to prevent prejudicial error, at least in the absence of further motion or objection by counsel. *Ahearn* v. *Roux*, 96 N. H. 71. "He may not now say that the court did not adequately instruct the jury, when he failed to ask for further relief, or that a mistrial should be granted when he did not move for one." *Moffatt* v. *Gale*, 92 N. H. 421, 422. See also, *Manning* v. *Company*, 90 N. H. 167; *Carr* v. *Orrill*, 86 N. H. 226.

When defendant's counsel undertook to revise his phraseology to "had a conversation," no further ruling was sought of the Court, but counsel merely stated: "Note my exception." If this could be considered sufficient indication within the rule of *Tuttle* v. *Dodge*, 80 N. H. 304, that counsel regarded the error as uncured, an assump-

tion which is questionable (*Whipple* v. *Railroad*, 90 N. H. 261), there was no prejudicial error which would require a new trial.

The question of whether father or son made the remark, or whether it was a two party exchange, did not affect the tenor of the argument, and no issue in the case turned upon the fact. The argument was directed to the length of time involved, and the fact that the plaintiff had not moved from the center of the road. Whether it was the boy who spoke or the father, or both, the gist of the argument would not have varied, and the effect upon the jury would have been the same. A harmless misstatement will not vitiate a verdict. *Prokey* v. *Hamm*, 91 N. H. 513.

The plaintiff points out that the record contains no finding by the Trial Court that what took place did not render the trial unfair. *Bruce* v. *Company*, 87 N. H. 462, 464. Ordinarily such a finding would be required. *LePage* v. *Company*, 97 N. H. 46, 52, 53. On the other hand: "If the fact were an immaterial one, or from the situation it was not probable the jury who heard the evidence were misled by the misstatement of it, it would be plain that there was no lack of fairness in the trial." *Benoit* v. *Perkins*, 79 N. H. 11, 20. This is such a case as was described by the quotation, and the plaintiffs' exception to argument is overruled.

Other exceptions transferred have been neither briefed nor argued, and are deemed to be waived.

*Judgment on the verdict.*

Goodnow, J., did not sit: the others concurred.